**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CHI N. TRAN, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-07-1815 |
| § | |
| TEXAN LINCOLN MERCURY, INC, § | |
| d/b/a CHAMPION LINCOLN, § | |
| MERCURY, AND ISUZU, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Chi N. Tran sued his former employer, Texan Lincoln Mercury, Inc. d/b/a Champion Lincoln, Mercury, and Isuzu ("Champion"). He alleges that Champion discriminated against him on account of his race, color, national origin, and/or background and terminated his employment in retaliation for his complaints about racial discrimination against him and other non-Caucasian employees.

Champion has moved to dismiss or stay this litigation and to compel arbitration. The motion is based on an Arbitration Agreement that Tran signed as a condition of continued employment. (Docket Entry No. 4). Under this Agreement, any "claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, as amended, as well as other state or federal laws or regulations) . . . shall be submitted to and determined exclusively by binding arbitration under the Federal

Arbitration Act." (*Id.*, Ex. A). The Agreement applies to both the employee and the "Dealership," which is defined to include "any and all parent, subsidiary or affiliated entities, and all of the respective owners, directors, managers (both direct and indirect), employees, and agents of the Dealership." (*Id.*, Ex. A).

Tran responded to motion to dismiss or stay and to compel arbitration. His only argument is that Champion's arbitration agreement is not enforceable against him because he is a "transportation worker" excluded from the coverage of the Federal Arbitration Act (FAA). (Docket Entry No. 8.) Champion has replied, (Docket Entry No. 10), and Tran has surreplied (Docket Entry No. 11).

Based on the motions, responses, and replies; the parties' submissions; and the applicable law, this court grants the motion to dismiss and to compel arbitration. The reasons for this ruling are set out in detail below.

**I.     Background**

Champion is a car dealership specializing in the sale of Lincoln, Mercury, and Isuzu automobiles. Tran is Asian-American and of Vietnamese ancestry. Tran began working for Champion in January 2003 as a Finance Manager. In March 2004, Champion promoted Tran to the position of Finance Director. (Docket Entry No. 1).

In his complaint, Tran alleged that before November 2004, he had complained to Champion's management of racial discrimination against him and other non-Caucasian employees. He complained of disparate treatment, alleging that he was required to work longer hours and perform more services than other similarly situated Caucasian employees

and that he had received harsher discipline than Caucasian employees for the same misconduct. Tran also claimed that Champion's officers and employees "described and addressed him with racially derogatory remarks and names." (Docket Entry No. 1). Tran alleged that after he received no response to his complaints, on November 15, 2004 he called the company's complaint hotline.

Tran alleged that on November 16, 2004, after his hotline call, Champion began investigating Tran's allegations. On December 6, 2004, Champion terminated Tran's employment.

Tran filed a charge of discrimination against Champion with the Equal Employment Opportunity Commission on January 20, 2005. He filed this suit against Champion in federal court on May 31, 2007. (Docket Entry No. 1). In response, Champion moved dismiss and to compel arbitration under the arbitration agreement Tran had signed on June 14, 2003. (Docket Entry No. 4).

## II. The Legal Standard

Champion argues that this suit must be dismissed or stayed and the parties compelled to arbitrate under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. Tran argues that the FAA is inapplicable to him because he is a "transportation worker" excluded from the coverage of the Act. The FAA provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such

> an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Tran's only response is that he is not subject to the FAA. He invokes Section 1 of the FAA, which states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has held that this exclusionary provision "exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

In examining whether the FAA applies to the dispute between Tran and Champion, the court must first decide whether Tran is a "transportation worker" under the Supreme Court's interpretation of the FAA. If Tran is a "transportation worker," then the exclusionary clause of the FAA applies to him and he cannot be compelled to arbitrate under the FAA.

If Tran is not a transportation worker, then under the FAA, this court must decide "whether the parties agreed to arbitrate the dispute in question. This determination involves

4

two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).

If there is a binding agreement to arbitrate, this court must then decide whether the dispute is within the scope of that agreement. *Tittle*, 463 F.3d at 418. "The Federal Arbitration Act (FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

Finally, the court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle*, 463 F.3d at 418 (citing *Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth*, 473 U.S. 614, 628 (1985)).

**III.   Analysis**

In his response to Champion's motions to dismiss and to compel arbitration, Tran argues only that he is a transportation worker excluded from the FAA's coverage, and that he therefore cannot be compelled to arbitrate. He does not dispute that he voluntarily agreed to be bound by the arbitration agreement he signed. The arbitration agreement is broad. It includes "any claims of discrimination and harassment, whether they be based on " state or federal law. (Docket Entry No. 4). Tran does not dispute that the arbitration agreement encompasses his claim of racial discrimination and retaliatory discharge. He also does not

5

argue that any legal constraints external to the arbitration agreement foreclose arbitration of his claims. Because the parties do not dispute any issues regarding the validity of the parties' agreement or the scope of the agreement are in dispute, this court's analysis focuses solely on whether the agreement is enforceable against Tran under the FAA.

Tran argues that he is a "transportation worker" excluded from the coverage of the FAA because he "was responsible for the transportation and distribution of motor vehicles into interstate commerce, or, at a minimum, his work was so closely related to such movement of interstate commerce as to be in practical effect part of it." (Docket Entry No. 8). He relies on the Supreme Court's initial interpretation of the FAA's exclusionary clause in *Circuit City Stores, Inc. v. Adams*, in which the Court held that Section 1 "exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Tran argues that, because he secured financing for automobile sales and leases and determined whether vehicles were delivered into interstate commerce, he is a worker "responsible for the transportation and distribution of goods." *Cole v. Burns Intern. Sec. Servs.*, 105 F.3d 1465, 1472 (D.C.Cir. 1997).

In response, Champion argues that Tran is neither a seaman, a railroad employee, nor a worker who transports goods in interstate commerce, and that he is therefore not a "transportation worker" within the meaning of the FAA. Champion relies on Fifth Circuit and other cases narrowly construing the FAA's exclusionary clause. The Fifth Circuit has held that "the exclusionary clause of Section 1 of the Arbitration Act should be narrowly construed to apply to the employment contracts of seamen, railroad workers, and any other

class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (1996) (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995).

In *Circuit City Stores*, the Supreme Court was confronted with facts similar to those in this case. Saint Clair Adams, a Circuit City employee, filed an employment discrimination lawsuit against Circuit City in state court. Circuit City sued in federal court to enjoin the state-court action and to compel arbitration of Adams's claims under the FAA and the arbitration clause in the employment application that Adams signed. The federal court compelled arbitration. Adams appealed, relying on an intervening Ninth Circuit decision that held that the FAA does not apply to "contracts of employment of . . . any other class of workers engaged in . . . commerce." *Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1085 (9th Cir. 1999). The Supreme Court rejected the Ninth Circuit's interpretation of the FAA, finding that such an interpretation "proves too much, for it would make the Section 1 provision superfluous. If all contracts of employment are beyond the scope of the Act . . . the separate exemption for 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in . . . interstate commerce' would be pointless." *Circuit City Stores*, 532 U.S. at 113. The Supreme Court held that Section 1's residual clause—"any other class of workers engaged in foreign or interstate commerce"—should be read "to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference" to those terms. *Id.* at 115. As a result, the Court concluded that the exclusionary clause of Section 1 applies only to these categories of "transportation workers."

*Id.* at 119.  The Court justified this holding in part on the fact that by the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers, and was in the process of enacting legislation providing for the mediation and arbitration of railroad labor disputes.  The Court read Section 1's exclusionary clause as exempting from the FAA only those specific classes of workers for whom it had already provided dispute-resolution schemes, to avoid disrupting the establishment or development of those schemes.  *See id.* at 121.

      Before *Circuit City*, the Fifth Circuit had addressed Section 1's exclusionary clause in *Rojas*.  In *Rojas*, a female disc jockey sued her employer for wrongfully terminating her employment in retaliation for her complaints of sexual harassment.  The employer sought to dismiss the action on the ground that the employee's claims were subject to a mandatory arbitration clause in her employment contract.  In examining whether the clause was enforceable under the FAA, the Fifth Circuit surveyed other circuit court interpretations of the Section 1 exclusion.  A majority of circuits narrowly construed the exclusion.  *Rojas*, 87 F.3d at 748.  The Fifth Circuit reached a similar conclusion: "[t]he exclusionary clause . . . should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are."  Id. (quoting *Asplundh*, 71 F.3d at 601).  The court noted that it would be impossible to use a broader definition of "commerce" in the clause "and not rob the rest of the exclusion clause of all significance."  *Id.* (quoting *Albert v. Nat'l Cash Register Co.*, 874 F.Supp. 1324, 1327 (S.D.Fla. 1994)).

Because the employee was not engaged in the movement of goods in interstate commerce in the same way as seamen and railroad workers, the court found that the arbitration clause in her employment agreement was enforceable.  Since then, the Fifth Circuit has determined that the Supreme Court's holding in *Circuit City Stores* "is fully consistent with our reasoning in *Rojas*."  *Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 394 (5th Cir. 2003).

"Seamen" is a term of art.  *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 342 (1991).  The FAA does not define "seamen."  In applying the FAA, courts use the definition found in case law interpreting the Jones Act, 46 U.S.C. § 30104 *et seq*.  *See, e.g., Brown*, 339 F.3d at 393 (5th Cir. 2003).  Under the Act, a seaman is "a person employed on board a vessel in furtherance of the vessel's purpose."  *Wilander*, 498 U.S. at 346 (internal quotations omitted).  A seaman is a ward of the admiralty court, *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962), and a member of a ship's company, *Yamaha Motor Corp. USA v. Calhoun*, 516 U.S. 199, 213 (1996).  "The key to seaman status is [an] employment-related connection to a vessel in navigation."  *Wilander*, 498 U.S. at 353.

"Railroad employee" is defined in the Railway Labor Act of 1926, 45 U.S.C. § 151 *et seq*.  A "railroad employee" includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) . . . ."  45 U.S.C. § 151.  A "carrier" under the Act includes, in relevant part, "any railroad subject to the jurisdiction of the Surface Transportation Board."  As with seamen and vessels, "the heart of the railroad enterprise involves navigation of a vessel, i.e., transportation."  *Veliz v. Cintas*

9

*Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *4 (N.D.Cal. Apr. 5, 2004).

Tran argues that, as Champion's Finance Manager and Finance Director, he "determined whether or not vehicles were delivered into interstate commerce" and is therefore a "transportation worker" excluded from the FAA. (Docket Entry No. 8). He cobbles together language from different circuits' interpretations of the term "transportation worker" to support his claims that either he is "responsible for the transportation and distribution of goods," *Cole*, 105 F.3d at 1472, or his "job was so closely related to the transport of . . . goods as to be in practical effect part of the shipping the goods," *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (internal quotations omitted).

Under the Fifth Circuit's decisions in *Rojas* and *Brown*, Tran is not "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas*, 87 F.3d at 748. Under the definition of "transportation worker" established by the Fifth Circuit in *Rojas* and *Brown*, workers who are not engaged in the movement of goods in interstate commerce as seamen and railroad workers are cannot be excluded from the FAA under Section 1 of the Act. Under Fifth Circuit precedent, a transportation worker is someone who works in the transportation industry—an industry whose mission it is to move goods. In contrast, Tran worked in the automobile industry—an industry whose mission it is to manufacture and sell automobiles. His duties involved selling cars and arranging loans for car purchases. His duties were not to transport goods on behalf of a carrier like a railroad or a vessel like a ship. Tran cites no cases in which a court has found that a car-dealership salesman or employee financing car sales qualifies as a

"transportation worker" within the meaning of Section 1 of the FAA. To the contrary, courts have uniformly enforced the arbitration agreements entered into by the employees of car dealerships under the FAA. *See, e.g., Figueroa v. W-W Automobiles, Inc.*, No. 402CV201DB, 2002 WL 31992188 (N.D.Miss.Nov. 5, 2002) (compelling a car salesman to submit to arbitration with his car-dealership employer); *Sammons v. Sonic-North Cadillac, Inc.*, No. 6L07-cv-277-Orl-19DAB, 2007 WL 2298032 (M.D.Fla. 2007, Aug. 07, 2007) (compelling a car mechanic to submit to arbitration with his car dealership employer); *see also Giordano v. Pep Boys—Manny, Moe, & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360 (E.D.Pa. Mar. 29, 2001) (compelling a car mechanic to submit to arbitration with his employer, a car-parts retailer).

Tran cites the National Traffic and Motor Vehicle Safety Act ("NTMV) of 1966, 49 U.S.C. § 30101 *et seq.*, and argues that because the NMTV's purpose is "to prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce," 49 U.S.C. § 30101(1), Congress has recognized that "an automobile dealership is an important part of interstate commerce." (Docket Entry No. 11). He cites the NTMV as evidence that Congress has recognized the sales of automobiles as the "sales of goods into interstate commerce" in a way that it has not recognized the sale of other items as "sales of goods into interstate commerce." (*Id.*) This argument fails. Although Congress may have recognized the importance of motor-vehicle safety when it passed the NMTV, such recognition does not translate into a solicitude for car dealerships and their employees above all other retailers of goods in interstate commerce. Nor does it translate into a recognition

11

of dealership employees as "transportation workers" under the FAA.  Tran cites no cases in which courts have relied on the NMTV to find that the employee of a car dealership is a "transportation worker" within the meaning of the exclusionary clause of Section 1 of the FAA.

As the Supreme Court has held, the exclusionary clause of Section 1 of the FAA was meant to exclude specific workers—those in the transportation industry with a "necessary role in the free flow of goods"—for whom Congress had established or was developing specific statutory dispute resolution schemes. *Circuit City Stores*, 532 U.S. at 121.  Tran's attempt to expand the definition of "transportation worker" to include a car dealership employee who facilitates the sale of cars stretches the term "past the breaking point." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002).  Tran is not a transportation worker under Section 1 of the FAA.  The FAA applies to his discrimination suit against Champion.  Because Tran does not dispute the validity or scope of the arbitration agreement he entered into with Champion, the agreement is enforceable against him.

**VI.   Conclusion**

Champion's motion to dismiss and motion to compel arbitration are granted.  An order of dismissal is separately entered.

SIGNED on August 29, 2007, at Houston, Texas.

                                                  Lee H. Rosenthal
                                                 United States District Judge